IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

|                        |   |                          |
|------------------------|---|--------------------------|
| DEBORAH SCHIMEK,       | § |                          |
|                        | § |                          |
| Plaintiff,             | § |                          |
|                        | § |                          |
| v.                     | § | CIVIL ACTION NO.         |
|                        | § | 3:05-CV-0045-P           |
| MCI, INC., et al.      | § |                          |
|                        | § |                          |
| Defendants.            | § |                          |

**MEMORANDUM OPINION AND ORDER**

Presently pending before the Court is:

1.    Plaintiff's Motion for Partial Summary Judgment, filed January 23, 2006;[1]

2.    Defendants' Motion to Stay Plaintiff's Lawsuit, or in the Alternative, Motion to
      Sever and Dismiss, Transfer, or Stay Plaintiff's Age Discrimination and
      Retaliation Claims ("Defendants' Motion to Stay"), filed March 3, 2006;[2]

3.    Defendants' Motion for Leave to File Sur-Reply to Plaintiff's Reply Brief to
      Defendants' Response to Plaintiffs' Motion for Partial Summary Judgment
      ("Defendants' Motion for Leave to File Sur-Reply") filed March 13, 2006;

4.    Plaintiff's Motion for Leave to File Supplemental Appendix in Support of Motion
      for Partial Summary Judgment, filed April 3, 2006;[3]

5.    Defendants' Motion for Summary Judgment, filed May 5, 2006;[4] and

---

[1] Defendants filed a Response on February 13, 2006, and Plaintiff filed a Reply on February 28, 2006.

[2] Plaintiff responded to this motion on March 23, 2006, in her Unopposed Motion for Leave to File Second
Amended Complaint. In such amended complaint, Plaintiff drops her claims of age discrimination and retaliation.
Thus, Defendants' Motion to Stay is DENIED AS MOOT.

[3] Defendant filed a Response on April 24, 2006

[4] Plaintiff filed a Response on June 8, 2006, and Defendants filed a Reply on June 23, 2006.

6.      Defendants' Motion to Strike Plaintiff's Summary Judgment Evidence, filed June 23, 2006.

After a thorough review of the parties' arguments, the pleadings, and the applicable law, the

Court hereby DENIES (1) Plaintiff's Motion for Partial Summary Judgment; DENIES AS

MOOT (2) Defendants' Motion to Stay; GRANTS (3) Defendants' Motion for Leave to File Sur-

Reply;[5] DENIES (4) Plaintiff's Motion for Leave to File Supplemental Appendix in Support of

Motion for Partial Summary Judgment; GRANTS (5) Defendants' Motion for Summary

Judgment; and DENIES AS MOOT (6) Defendants' Motion to Strike Plaintiff's Summary

Judgment Evidence.

## I.      Introduction

Plaintiff Deborah Schimek ("Plaintiff") began her employment with MCI, Inc.

(hereinafter "MCI" or "Defendants")[6] in 1990 when MCI acquired Plaintiff's employer. On

August 15, 1990, Plaintiff signed an offer letter from MCI, whereby she would relocate to

Richardson, Texas, to begin her employment with MCI. (Def.'s App. at 300-01.) Plaintiff was

ultimately terminated on January 26, 2004, in connection with a reduction in force.

Plaintiff filed her original complaint against MCI on January 6, 2005. The complaint

alleged: (1) breach of contract; (2) interference with rights under the Family and Medical Leave

---

[5] Plaintiff's reply in support of her motion for partial summary judgment contained new arguments and an appendix. "In principle, the Court should not consider arguments raised for the first time in a Reply brief." *Blanchard & Co. v. Heritage Capital Corp.*, No. 3:97-CV-0690-H, 1997 WL 757909, at *1 (N.D. Tex. Dec. 1, 1997). But no "palpable injustice" exists when the opposing party is given opportunity to respond. *Id.* In such circumstances, a sur-reply is wholly merited. Thus, the Court GRANTS Defendants' Motion for Leave to File Sur-Reply.

[6] Plaintiff brings suit against MCI, Inc., MCI WorldCom Communications, Inc., and MCI Network Services, Inc. For the sake of convenience, the Court will collectively refer to all defendants as "MCI" or "Defendants."

Act ("FMLA"); (3) violation of the Equal Pay Act ("EPA"); (4) retaliation for complaints of EPA violations; and (5) failure to notify of Consolidated Omnibus Budget Reconciliation Act ("COBRA") rights. On September 15, 2005, Plaintiff filed a motion to amend her complaint. The motion was granted in part, as the Court allowed Plaintiff to add MCI Network Services, Inc. f/k/a MCI WorldCom Network Services, Inc. as a party defendant and amend her complaint to assert fraud and fraudulent inducement related to the breach of contract, federal employment discrimination claims with the exception of sexual harassment, and WARN Act claims. Plaintiff has subsequently dropped her claims of age discrimination, retaliation for age discrimination complaints, fraud, and fraudulent inducement. Both parties now submit motions for summary judgement. Defendants move for summary judgment on all of Plaintiff's claims. As Plaintiff's motion is only for partial summary judgment on certain COBRA claims, it will be discussed in the context of Defendants' motion for summary judgment on the COBRA claims.

## II.      Summary Judgment Standard

Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). All evidence and the reasonable inferences to be drawn therefrom must be viewed in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The moving party bears the burden of informing the district court of the basis for its belief that there is an

absence of a genuine issue for trial, and of identifying those portions of the record that demonstrate such an absence. *Celotex*, 477 U.S. at 323.

Once the moving party has made an initial showing, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The party defending against the motion for summary judgment cannot defeat the motion unless she provides specific facts that show the case presents a genuine issue of material fact, such that a reasonable jury might return a verdict in her favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Mere assertions of a factual dispute unsupported by probative evidence will not prevent summary judgment. *Id.* at 248-50; *Abbott v. Equity Group*, 2 F.3d 613, 619 (5th Cir. 1993). In other words, conclusory statements, speculation and unsubstantiated assertions will not suffice to defeat a motion for summary judgment. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc). If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to her case, and on which she bears the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23. Finally, the Court has no duty to search the record for triable issues. *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

### III.     Breach of Contract

Plaintiff alleges that, prior to her move from Georgia to Texas in 1990, she was provided a written relocation agreement by John Skinner, then Vice President of MCI. Plaintiff contends that this agreement was in writing and promised her full relocation benefits back to Georgia if

Plaintiff was ever terminated by MCI. The agreement has subsequently been either lost or destroyed. Upon her termination, Plaintiff sued to have the agreement enforced.

A contract must be sufficiently definite in its terms in order to be binding. *T. O. Stanley Boot Co., Inc. v. Bank of El Paso*, 847 S.W.2d 218, 221 (Tex. 1992). When a written contract is lost or destroyed, its existence may be shown by clear and convincing parol evidence. *Bank of America v. Haag*, 37 S.W.3d 55, 58 (Tex. App.--San Antonio, 2000). In such cases, the court must be able to determine the legal obligations of the parties in the contract. *Bendalin v. Delgado*, 406 S.W.2d 897, 899 (Tex. 1966). If an alleged agreement is so indefinite as to make it impossible for a court to "fix" the legal obligations and liabilities of the parties, a court will not find an enforceable contract. *Engleman Irrigation Dist. v. Shields Bros.*, 960 S.W.2d 343, 352 (Tex. App.--Corpus Christi, 1997).

Because Plaintiff claims that the alleged contract has been either lost or destroyed, it must be proved by clear and convincing parol evidence. *Haag*, 37 S.W.3d at 58. Plaintiff offers unconvincing parol evidence, providing nothing that the Court can use to fix the legal obligations of the parties. Plaintiff cites various friends and associates who knew of the agreement. (*See, e.g.*, Pl.'s App. 246-48, 313.) But their testimony is conflicting as to the contents of the agreement, and they offer little more than affirmations that they had heard about the agreement at some point. Plaintiff accuses Defendant of forcibly removing and destroying the document but offers no evidence of wrongdoing other than her own assertions. The ambiguous recollections of witnesses and relatives falls well short of the "clear and convincing" standard seen in *Hagg*.

Furthermore, the essential terms of the contract, according to Plaintiff, are that Defendant agrees to pay Plaintiff full relocation expenses if she was ever terminated by Defendant. But the agreement between the parties fails to stipulate anything more than vague promises of future reimbursement. The purported contract lacks an expiration date, price to be paid or formula contrived to set the price, and description of services that Defendant must render in consideration of the reimbursement. Even if it is argued that these terms were to be decided in the future, courts have held that "[w]here an essential term is open for future negotiation, there is no enforceable contract." *T.O. Stanley Boot*, 847 S.W.2d at 221. Plaintiff does not allege that certain essential terms of the contract were decided upon. As such, the Court finds there is no enforceable contract and summary judgment in favor of MCI is appropriate.

## IV.   Title VII Claims

In her complaint, Plaintiff brings claims for gender discrimination and retaliation. Title VII makes it unlawful for an employer to adversely affect the status of an employee because of the individual's gender. 42 U.S.C. §2000e-2(a)(1). "Title VII also prohibits retaliation against employees who engage in protected conduct." *Fabela v. Socorro Indep. Sch. Dist.*, 329 F.3d 409, 414 (5th Cir. 2003) (citing 42 U.S.C. § 2000e-3(a)).

Absent direct evidence of discrimination, as in the present case, Plaintiff's employment discrimination claims are analyzed under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000). Under the *McDonnell Douglas* framework, Plaintiff must first establish, by a preponderance of the evidence, a prima facie case of discrimination in order to

survive Defendant's Motion for Summary Judgment. The prima facie case, once established, raises a presumption of discrimination which the Defendant must rebut by articulating a legitimate, nondiscriminatory reason for the adverse employment action. *Medina v. Ramsey Steel Co.*, 238 F.3d 674, 680 (5th Cir. 2001). This burden on the employer is only one of production, not persuasion, involving no credibility assessments. *Russell*, 235 F.3d at 222. If the employer carries its burden, the mandatory inference of discrimination created by the prima facie case disappears. *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 350 (5th Cir. 2005). In order to survive summary judgment, a plaintiff must then raise a genuine issue of material fact as to whether the employer's proffered reason was merely pretext for discrimination. *See id.*; *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002). Plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justifications are false, may show pretext and permit the trier of fact to find the employer unlawfully discriminated. *Machinchick*, 398 F.3d at 351; *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 142 (2000).

### a.   Gender Discrimination

According to Plaintiff, her employment was terminated on January 24, 2004, because of her gender.[7] (Compl. ¶ 70.)  MCI argues that Plaintiff was terminated as part of a large,

---

[7] Plaintiff's complaint could further be construed to assert a claim for gender discrimination in MCI's decision not to re-hire her. (Compl. ¶ 50.) MCI moved for summary judgment on this claim, arguing that they did not receive an employment application from Plaintiff. Plaintiff did not respond to this argument or otherwise acknowledge that she intended to assert a discrimination claim based on MCI's failure to hire her. Thus she does not meet her burden to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Furthermore, the failure to respond is a tacit abandonment this claim. *Carroll v. City of Dallas*, 2005 WL 3543347, at *5, *7 (N.D. Tex. Dec. 28, 2005) (citing *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 (5th Cir. 1992)). Even if such claims were not considered abandoned, the Court finds Plaintiff has not provided evidence that, after MCI failed to hire her, the position remained open or was filled by a person outside the protected class; thus she fails

corporate-wide reduction in force ("RIF"). (*See* Pl.'s App. at 56, 120; Def.'s App. at 1.) MCI

states that the RIF occurring in January of 2004 was one of eight RIFs implemented by MCI

between April 2002 and June 2004. (Def.'s App. at 6.) MCI further states that the decision to

terminate Plaintiff was not motivated by her gender. (Def.'s App. at 2.) Thus, MCI moves for

summary judgment on Plaintiff's claim, asserting that the gender discrimination claim fails as a

matter of law.

      To survive summary judgment on her discriminatory termination claim, Plaintiff must

first establish a prima facie case by showing that: (1) she is a member of a protected class, (2)

she was qualified for her position, (3) she suffered an adverse employment action, and (4) she

was replaced by someone outside the protected class, or, that others similarly situated were

treated more favorably. *Septimus v. Univ. of Houston*, 399 F.3d 601, 609 (5th Cir. 2005). When

the employer does not replace the plaintiff, the fourth element requires the plaintiff to show that

others who are not in the protected class remained in similar positions. *Bauer v. Abemarle*, 169

F.3d 962, 966 (5th Cir. 1999).

      It is undisputed that Plaintiff, a female, is a member of a protected class and was

qualified for her position, thus the first two elements are easily met. In addition, Plaintiff's

termination constitutes an "adverse employment action" that satisfies the third prong of the

prima facie case. *Dollis v. Rubin*, 77 F.3d 777, 781-82 (5th Cir. 1995). Lastly, Plaintiff alleges

that when she was terminated, MCI "retained male employees in Plaintiff's position who were

clearly less qualified than her." (Compl. ¶ 49.) The evidence shows that several male employees

---

to meet her prima facie case. *See Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1087 (5th Cir. 1994).

from her group were not terminated as a result of the RIF. "To establish a prima facie case, a plaintiff need only make a very minimal showing." *Thornbrough v. Comlumbus & Greenville R.R. Co.*, 760 F.2d 633, 639 (5th Cir. 1985), *abrogated on other grounds by St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993); *see also Amburgey v. Corhart Refractories Corp.*, 936 F.2d 805, 812 (5th Cir. 1991) ("[A] prima facie case is fairly easily made out."). Thus, the Court finds that Plaintiff has established a prima facie case of gender discrimination.

Once Plaintiff establishes a prima facie case, the burden of production shifts to Defendants to establish a legitimate, non-discriminatory reason for the ultimate employment decision. *Reeves*, 530 U.S. at 142. MCI claims that Plaintiff's termination was primarily due to the RIF. In December of 2003, John Casper ("Casper"), the Director of Network Project Management for MCI, was told by MCI that he was required to reduce the number of employees in his group. (Pl.'s App. at 120.) Based on this directive, Casper selected individuals to be a part of the RIF based on rankings given to him by the managers under his supervision. (Pl.'s App. at 122; Def.'s App. at 1.) Richard Hasz ("Hasz"), Plaintiff's manager, ranked Plaintiff as the least valuable of the five employees in his group. (Def.'s App. at 21.) As such, Plaintiff was selected for termination along with Matt Trosel, the fourth ranked employee in the group. (*See* Pl.'s App. at 15-16, 135.) The Fifth Circuit has stated that a reduction in force is a presumptively legitimate and non-discriminatory reason for discharge. *E.E.O.C. v. Texas Instruments, Inc.*, 100 F.3d 1173, 1181 (5th Cir. 1996). Therefore, Defendants have met their burden of production.

Once the parties have met their initial burdens, the onus is on Plaintiff to adduce sufficient evidence such that a reasonable trier of fact could conclude there was pretext or

intentional discrimination. *See McDonnell Douglas*, 411 U.S. at 802-04; *Byers v. Dallas Morning News*, *Inc.*, 209 F.3d 419, 425-26 (5th Cir. 2000). In her complaint, Plaintiff makes numerous allegations regarding the work environment at MCI in an effort to demonstrate that her termination was based on her gender. After examination of the record, however, the Court finds that no reasonable fact-finder could conclude that Plaintiff's termination was motivated by gender discrimination.

Plaintiff first asserts that, in June of 2002, she was transferred from Hasz to Rita Neveau ("Neveau"), a female supervisor, because Hasz "volunteered that he could not let his 'GUYS' go." (Compl. ¶ 32.) Plaintiff assumes that Hasz was referring to Michael Bowman and Edwin Spivey, but offers no evidence that would corroborate this statement or even support the assumption that he was specifically referring to males. Even assuming that Hasz made this statement, the remark was not related to Plaintiff's termination as it was made more than a year and a half before she was part of the RIF. The character of the stray remark is insufficient to support an inference of discrimination in a subsequent discharge. *Brown v. CSC Logic, Inc.*, 218 F.3d 651, 656 (5th Cir. 1996) (holding that stray remarks made 16 months before the termination were too remote in time to support inference of discriminatory discharge).

Plaintiff also claims that Michael Bowman ("Bowman"), a male co-worker, told her that "women were only good for one thing" and that "American women did not know their place." (Compl. ¶ 38.) In her complaint, Plaintiff also avers that Bowman would look at pornographic web-sites in her presence while making crude comments toward her. (*Id.* ¶ 39.) But apart from these statements, however, Plaintiff offers no evidence of discrimination. In addition, Plaintiff

does not claim that Bowman had any influence on her ultimate termination. Both Hasz and Casper state that they did not take Plaintiff's co-worker's opinions into account when deciding to terminate her. (Pl.'s App. at 4, 120.) "Stray remarks with no connection to an employment decision cannot create a fact issue regarding discriminatory intent and are insufficient to defeat summary judgment." *Scales v. Slater*, 181 F.3d 703, 712 (5th Cir. 1999).

Plaintiff further alleges that, in 2002, Neveau, her female supervisor, inappropriately touched her on the inner thigh and made sexually suggestive comments. (Pl.'s App. at 449.) Plaintiff avows that after this incident she received a multitude of pornographic e-mails at her work computer. (Compl. ¶ 35.) After informing her supervisor of the e-mails, Ms. Neveau purportedly refused to allow Plaintiff to turn on an e-mail filter and "snickered" about the situation. (*Id.*) Taking these allegations as true, the events do not support a finding that Plaintiff's termination was due to her gender. After the incident with Neveau, Casper re-assigned Plaintiff to Hasz' supervision. (Pl.'s App. at 123.) The decision to terminate Plaintiff was made more than a year later by Casper, based on input from Hasz- not Neveau. (*Id.* at 122.) Furthermore, Casper states that pornographic spam e-mail was a company-wide problem not limited to Plaintiff's computer. (*Id.* at 125.)

In all her allegations, Plaintiff fails to demonstrate a connection between the behavior at issue and her ultimate termination. There is nothing that would suggest she was being treated unfairly simply because she was a woman. The facts reveal that an RIF occurred in January of 2004 which resulted in the termination of several employees, both male and female. Plaintiff

does not present any evidence that would suggest the decision to terminate her was motivated by gender bias.

In her summary judgment briefing, Plaintiff presents little evidence to support the allegations in her complaint, rather, she argues that the employee ratings Hasz submitted to Casper contained multiple errors, thus supporting an inference of pretext. But despite Plaintiff's lengthy efforts to cast doubt on Hasz's rating system, such evidence does not raise a fact issue as to gender discrimination in Plaintiff's termination.

In late 2003, Casper requested that Hasz rank the employees on his team. (Pl.'s App. at 133.) Casper did not inform Hasz that such ratings would be used in an upcoming RIF, nor did he specifically tell him what factors to take into account when making the rankings. (*Id.* at 4, 133.) In order to rank the five employees on his team, Hasz consulted spreadsheets he had previously created in preparation for annual performance reviews of his employees. (*Id.* at 4; Def.'s App. at 21.) Such spreadsheets were based on objective and subjective categories, measuring performance and ability in areas such as scheduling, management, communication skills, initiative, judgment, commitment, and leadership. (*See* Pl.'s App. at 106-117.)

Plaintiff argues that the data Hasz compiled on the spreadsheets was not accurately transferred to Hasz' ranking of the employees, and this discrepancy shows pretext. Plaintiff goes to great lengths to recalculate the rankings based on a more accurate transfer of data from the spreadsheets and her view that she should be rated higher in several of the categories. (*See, e.g.*, Pl.'s App. at 457.) But Plaintiff's analysis misses the mark. While Hasz testifies that he consulted the spreadsheets when making the rankings, he also states that he considered

experience and potential when making the rankings, even though such factors were not specifically articulated in the spreadsheets. (*Id.* at 8, 9.) But even if errors were made in the calculation of the factors used to determine the final rankings given to Casper, such errors do not prove pretext. Hasz made a good faith effort to rank his employees, and the RIFs were made based on these rankings. Plaintiff cannot argue that she should have been rated higher based on subjective measurements, and that such discrepancies prove pretext. According to Plaintiff's re-calculations, every employee's score was incorrectly transferred from the spreadsheets. (*See id.* at 457.) Based on these revised numbers, some male co-workers were ranked too high, while some male co-workers were ranked too low. Even if the Court were to accept Plaintiff's revised numbers, such evidence does not evince gender bias on the part of MCI.

The Court finds this case factually similar to *Little v. Republic Refining Co.*, 924 F.2d 93 (5th Cir. 1991). In *Little*, two employees were terminated in an RIF based upon the fact that they were the two lowest scoring employees on an annual review. 924 F.2d at 95. Similar to the instant case, the plaintiff in *Little* contended that there was conflicting evidence as to the accuracy of the employment review and argued that this supported an inference that discrimination motivated the termination. *Id.* But the Fifth Circuit was unpersuaded, holding that "even an incorrect belief that an employee's performance is inadequate constitutes a legitimate, non-discriminatory reason" for a termination. *Id.* at 97. The mere fact that there was a dispute in the evidence concerning the plaintiff's job performance did not provide a sufficient basis for a reasonable factfinder to infer that discrimination had occurred. Additionally, the fact that the two lowest rated employees were fired further supported the employer's claim that it was motivated

by performance reviews and not discriminatory purposes. The plaintiff's claim of discrimination was further undermined by the fact that the other employee terminated because of the low ranking was outside the class protected from discrimination. *Id.*

The same factual circumstances are currently before the Court. MCI terminated the two lowest ranked employees in Hasz' group. One was a male, one was a female. The evidence submitted by Plaintiff does not raise an inference of discrimination in MCI's decision. MCI experienced well-documented financial difficulties and was forced to conduct several RIFs to reduce costs. As part of the January 2004 RIF, MCI terminated Plaintiff based on their belief that she was the lowest ranked performer in Hasz' group.

Furthermore, Casper was the final decision-maker in the determination to include Plaintiff in the RIF (Def.'s App. at 2.), and Plaintiff fails to produce evidence showing that Casper's decision-making process was based on gender or retaliatory motives. Casper testified that, after receiving the rankings from all his supervisors, he selected the fourteen lowest ranking employees. (Def.'s App. at 338.) Then, he used his own judgment regarding each employee's past performance to put the fourteen employees from different departments into a combined ranking. (*Id.* at 338, 354.) Once Casper learned that he would only have to terminate seven employees, he chose the seven employees who were ranked lowest on his list. (*Id.* at 338-39.) Both males and females were included on the final list of fourteen, both males and females were terminated in the final seven. There is no evidence that gender discrimination played a role in Casper's selection process. In sum, Plaintiff has presented no evidence that could lead a

reasonable fact-finder to believe that MCI's rationale for the termination was a pretext to hide discriminatory motives.

### b.    Retaliation

Plaintiff also alleges that she was terminated for retaliatory purposes in violation of Title VII. In her complaint, Plaintiff recounts numerous incidents whereby she complained to management about the allegedly unlawful employment practices of MCI. For example, in September of 2003, Plaintiff states that she complained to Hasz about how she was being paid less than male project managers. (Compl. ¶ 26.) In response, Hasz purportedly told Plaintiff to mind her own business. (*Id.*) Plaintiff alleges that Hasz later told Casper of this incident, and both men subsequently became hostile toward her. (*Id.* at ¶ 27.) Plaintiff asserts that she repeatedly attempted to meet with Casper regarding her unequal pay, but was unable to do so as Casper would avoid her. (*Id.* at ¶ 27, 28.) Later, Plaintiff again talked to Hasz about her lower salary, and told him that she would file a complaint if her salary was not raised to the level of her male co-workers. (*Id.* at ¶ 31.)

Plaintiff also states that she complained of sexual harassment. In October of 2002 Plaintiff attempted to talk to Hasz about inappropriate sexual touching by Neveau, her supervisor, but claims that Hasz would not do anything about it. (Compl. ¶ 33.) In November of 2002, "and approximately 40 times thereafter," Plaintiff complained to Neveau about pornographic e-mails she received from an unknown source. (*Id.* at ¶ 35.) In March of 2003, Plaintiff states that she went to Norma Jaminet in Human Resources to discuss the unwanted sexual advances by Neveau, as well as her unequal pay issues. (*Id.* at ¶ 36.)

Furthermore, Plaintiff claims that she was told to lie to the Securities and Exchange Commission (*Id.* at ¶ 43.) and later reported ethics violations of her co-workers to Hasz. (*Id.* at ¶ 46.) Plaintiff's complaint cites to another co-worker who made similar complaints and was later terminated. Because of this, Plaintiff alleges that "[t]he Network Project Management group has a 100% rate of laying off anyone that goes to Human Resources or department management to report any unlawful or inappropriate business practice." (*Id.* at ¶ 48.) In sum, Plaintiff alleges that she was the victim of retaliation because she was terminated as a result of her various complaints regarding the unlawful employment practices at MCI.

In retaliation cases where the plaintiff offers circumstantial evidence, the same *McDonnell Douglas* burden shifting framework applies. *Septimus*, 399 F.3d at 608. To establish a prima facie case of retaliation under Title VII, Plaintiff must demonstrate that she: (1) engaged in a protected activity; (2) that an adverse employment action occurred; and (3) that a causal link exists between the protected activity and the adverse employment action. *Banks v. E. Baton Rouge Parish Sch. Bd.*, 320 F.3d 570, 575 (5th Cir. 2003).

The Fifth Circuit has held that complaints to a supervisor, even if informal, may be sufficient to establish protected activity. *See, e.g.*, *Fierros v. Tex. Dep't of Health*, 274 F.3d 187, 194 (5th Cir. 2001); *Gee v. Principi*, 289 F.3d 342, 344-45 (5th Cir. 2002). As noted above, Plaintiff recites numerous incidents where she complained to her supervisor about gender discrimination, sexual harassment, and unethical business practices. Thus, the first element of the prima facie case is met. Second, Plaintiff was terminated as part of the RIF. This is undoubtedly

an adverse employment action; the second element is met.[8] Regarding the third element, a causal

link is established when the evidence shows that the employer's decision to terminate the

employee was based, at least in part, on knowledge of the employee's protected activity. *Medina*,

238 F.3d at 684. It is undisputed that Casper made the decision to terminate Plaintiff, based at

least in part on input from Hasz. Plaintiff has alleged that both Hasz and Casper were aware of

her complaints. Furthermore, Plaintiff has alleged that at least some of her complaints were made

as late as November of 2003, less than three months before her termination. (Compl. ¶ 30, 31.)

The Fifth Circuit has held that "[c]lose timing between an employee's protected activity and an

adverse action against her may provide the 'causal connection' required to make out a prima

facie case of retaliation." *Evans v. City of Houston*, 246 F.3d 344, 354 (5th Cir. 2001) (internal

citations omitted). The court noted that a time gap of up to four months had been held sufficient

to demonstrate a causal connection such that the third prong of a prima facie case could be

satisfied. *Id.* (citing *Weeks v. NationsBank, N.A.*, No. 3:98-CV-1352-M, 2000 WL 341257, at *3

(N.D. Tex. 2000)). As such, Plaintiff has met her burden to establish a prima facie case of

retaliation.

     As Plaintiff has established her prima facie case, the burden once again shifts to

Defendants to articulate a legitimate, non-discriminatory reason for the discharge. Defendants

assert that Plaintiff was terminated because of the RIF, not retaliatory animus. As discussed

---

[8] To the extent Plaintiff intended to allege retaliation in MCI's decision not to re-hire her, such claims are considered abandoned because of Plaintiff's failure to respond to Defendants' motion for summary judgment on this claim. *Carroll v. City of Dallas*, 2005 WL 3543347, at *5, *7 (N.D. Tex. Dec. 28, 2005) (citing *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 (5th Cir. 1992)). Moreover, the Court finds that Plaintiff cannot meet the prima facie case on this claim because she makes no showing of a causal connection between her complaints while she was employed and the subsequent decision not to hire her several months later.

previously, the Fifth Circuit has stated that a reduction in force is a presumptively legitimate and non-discriminatory reason for discharge. *Texas Instruments*, 100 F.3d at 1181. Therefore, Defendants have met their burden of production.

Once the parties have met their initial burdens, the onus is on Plaintiff to adduce sufficient evidence such that a reasonable trier of fact could conclude there was pretext or intentional discrimination. *See McDonnell Douglas*, 411 U.S. at 802-04; *Byers*, 209 F.3d at 425-26. Under the *McDonnell Douglas* evidentiary framework, the employee's ultimate burden is to prove that the employer's stated reason for the adverse action was merely a pretext for the real, retaliatory purpose. *Septimus*, 399 F.3d at 608. "The proper standard of proof on the causation element of a Title VII retaliation claim is that the adverse employment action taken against the plaintiff would not have occurred 'but for' her protected conduct." *Id.* (citing *Pineda v. United Parcel Serv., Inc.*, 360 F.3d 483, 487 (5th Cir. 2004)).

While Plaintiff cites much evidence of her complaints, she presents no evidence that would independently suggest that she was fired *because of* such complaints. In other words, there is no evidence that would lead a reasonable fact-finder to believe Plaintiff would not have been fired if she had not made the complaints. The evidence clearly shows that MCI was struggling financially and utilized multiple RIFs to cut costs. Prior to the January 2004 RIF, Casper requested that his project managers submit rankings to him. Without knowing that the rankings were to be used for the RIF, Hasz ranked Plaintiff lowest in his group. Based on this ranking and his own knowledge of the employees, Casper chose Plaintiff to be one of several employees terminated during the January 2004 RIF. Plaintiff has presented no evidence to refute

this legitimate reason for termination. Plaintiff denies being the least productive member of her

project management group, but conclusory assertions and subjective beliefs are insufficient to

demonstrate pretext. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir.

1996) (en banc). Additionally, the Fifth Circuit has noted that "[m]erely disputing [an

employer's] assessment of [a plaintiff's] work performance will not necessarily support an

inference of pretext." *Evans v. City of Houston*, 246 F.3d 344, 355 (5th Cir. 2001) (quoting

*Shackelford v. DeLoitte & Touche, LLP*, 190 F.3d 398, 404 (5th Cir. 1999)). Moreover, MCI

does not claim that Schimek was unproductive; in fact, Casper states that he believed Schimek to

be a good employee. (Def.'s App. at 319.) Casper further states that all the employees who were

terminated as part of the RIFS were good employees. (*Id.* at 334.) MCI simply found itself in the

unfortunate position of having to make a reduction in force. There is no evidence that the process

used by MCI to select employees for the RIF was based on gender or retaliatory motives.

Plaintiff has submitted insufficient evidence to cast doubt on the employer's legitimate reason

for the termination.

## V.      EPA

Plaintiff alleges that between October 26, 2003, and January 26, 2004, she was paid less

than Michael Bowman and Peter Cloutier in violation of the Equal Pay Act ("EPA").[9]  During

this time Plaintiff and Bowman had the same job title, while Cloutier was a Senior Staff

---

[9] Defendant alleges that other male employees were paid more than her, but the Court does not address such allegations because Plaintiff does not describe their pay or responsibilities sufficiently enough to even state a *prima facie* claim.

Specialist. Plaintiff alleges that her job was similar enough to Bowman's and Cloutier's to merit equal pay.

To make a case under the EPA, Plaintiff must show that an employer pays different wages to employees of opposite sexes for equal work on jobs that require skill, effort, and responsibility performed under similar working conditions. 29 U.S.C. § 206(d)(1); *Corning Glass Works v. Brennan*, 417 U.S. 188, 195 (1974); *see also Chance v. Rice Univ.*, 984 F.2d 151, 153 (5th Cir. 1993). Plaintiff need not show that her job duties were identical to those of higher paid male employees, only that the "skill, effort and responsibility" required in the performance of the compared jobs are "substantially equal." *Peters v. City of Shreveport*, 818 F.2d 1148, 1153 (5th Cir. 1987). The standard for proving equality is "higher than mere compatibility yet lower than absolute identity." *Brennan v. City Stores, Inc.*, 479 F.2d 235, 238 (5th Cir. 1973).

Plaintiff fails to establish a claim under the EPA because she cannot show that her job is similar enough to either co-worker to bring a claim. Plaintiff first alleges that Bowman was paid approximately $4,500 more per year than her, even though their job titles were identical. While Bowman and Plaintiff held the same title and handled similar matters, the evidence reveals that Bowman was given greater responsibility as a trainer, and his supervisor entrusted him with the more complex projects. (Def.'s App. 20.) Plaintiff herself admits that Bowman was assigned to be the trainer instead of her. (Def.'s App. 255.) Merely having the same title is not enough to demonstrate that two positions are similar enough to bring a claim under the EPA. *Brennan*, 479 F.2d at 239; *Pearce v. Wichita County*, 590 F.2d 128, 133 (5th Cir. 1979) (finding that the controlling factor is job content and the actual duties performed by the respective employees);

*see also Hodgson v. Golden Isles Convalescent Homes, Inc.*, 468 F.2d 1256, 1258 (1972)

("Congress intended to permit employers wide discretion in evaluating work for pay purposes.").

Plaintiff likewise admits that she did not perform the same tasks as Cloutier either.

Specifically, Plaintiff testified that Cloutier was responsible for major decommissions and

normal lease terminations and she was not. (Def.'s App. 257.)  Instead, she merely states that she

"would have been his backup if he was out." (*Id.*) But simply asserting that she was capable of

doing another's job is insufficient; Plaintiff must show that the actual content of the jobs was

substantially equal. *See, e.g.*, *EEOC v. TXI Operations, L.P.*, 394 F. Supp. 2d 868, 876 (N.D.

Tex. 2005). As Plaintiff admits the jobs were not equal, she cannot maintain her claim. Thus,

summary judgment is proper on all of Plaintiff's Equal Pay Act claims.

## VI.    FMLA

The Family and Medical Leave Act gives eligible employees the right to take temporary

medical leave from work in certain circumstances. 29 U.S.C. § 2601(b)(1)-(2); *Hunt v. Rapides

Healthcare Sys.*, 277 F.3d 757, 763 (5th Cir. 2001). In particular, the FMLA states that eligible

employees are entitled to leave, *inter alia*, "[b]ecause of a serious health condition that makes

the employee unable to perform the functions of the position of such employee." 29 U.S.C. §

2612(a)(1)(D).

In her complaint, Plaintiff claims that she began to experience back problems and, in

June of 2003, was "diagnosed with a disc protrusion, hemangioma, and levoscoliosis of the

lumbar spine." (Compl. ¶ 15.) Plaintiff alleges that she immediately notified her supervisor of

such condition and subsequently received a spinal injection as temporary treatment for the pain.

(*Id.*) Plaintiff then informed her supervisor that she would eventually need corrective surgery to address the medical problems with her back. Hasz requested that Plaintiff give him prior notice before undergoing such surgery. (*Id.* at ¶ 16.) In October of 2003, Plaintiff's back pain resumed and she advised Hasz that she would need surgery. Purportedly, Hasz told Plaintiff that she could not use FMLA leave or vacation time to have the surgery.

As a result, Plaintiff argues that MCI interfered with her rights under the FMLA, in violation of 29 U.S.C. § 2615(a)(1).[10] (Compl. ¶ 73.) To prevail under such claim, Plaintiff must show "that (1) she is an eligible employee under the FMLA, (2) the defendant is an employer subject to the requirements of the FMLA, (3) she was entitled to FMLA leave, (4) she gave notice to the defendant of her intention to take FMLA leave, and (5) the defendant denied her the benefits to which, under the FMLA, she was entitled." *Morgan v. Neiman Marcus*, No. 3:05-CV-0079-G, 2005 WL 3500314, at *4 (N.D. Tex. Dec. 20, 2005); *see also Cavin v. Honda of Am. Mfg.*, 346 F.3d 713, 719 (6th Cir. 2003).

Defendants now move for summary judgment on Plaintiff's FMLA claims, arguing that Plaintiff cannot meet the third or fourth elements of the prima facie case. Defendants contend that Plaintiff was not entitled to FMLA leave and further failed to give adequate notice of her intention to take FMLA leave.

---

[10] 29 U.S.C. § 2615(a)(1) makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." The FMLA also prohibits an employer from retaliating or discriminating against an employee who exercises her FMLA rights. *Nero v. Indus. Molding Corp.*, 167 F.3d 921, 927 (5th Cir. 1999); 29 U.S.C. § 2615(a)(2); *see also* 29 C.F.R. § 825.220(c) (1997). Plaintiff, however, does not allege retaliation or discrimination under the FMLA.

To establish eligibility for FMLA leave, Plaintiff must adduce evidence showing that she suffered a serious health condition that made her unable to perform the functions of her job. *Mauder v. Metro. Transit Auth. of Harris County, Tex.*, 446 F.3d 574, 579 (5th Cir. 2006); 29 U.S.C. § 2612(a)(1)(D) (2002). Plaintiff asserts that she requested FMLA leave for back surgery in October of 2003, but admits that she provided no documentation regarding the necessity of such surgery. (Def.'s App. at 207.) MCI's FMLA policy states that "[e]mployees utilizing time out under the Company's FMLA policy will be required to submit an FMLA certification form completed and signed by a physician." (*Id.* at 25.) The FMLA provides that an employer may require that a request for FMLA leave be supported by a certification issued by a treating physician or health care provider. 29 U.S.C. § 2613(a); *Hurt v. Ecolab, Inc.*, No. 3:05-CV-1508-BD, 2006 WL 1409520, at *4 (N.D. Tex. May 23, 2006). In such cases, the failure to provide an appropriate medical certification is fatal to a claim under the FMLA. 29 C.F.R. § 825.311; *Hurt*, 2006 WL 1409520, at *4. As Plaintiff admits she did not provide MCI with an FMLA certification form from her physician, MCI's obligations were not triggered and her claim fails.[11]

Furthermore, Plaintiff makes no showing that back surgery was medically necessary. Plaintiff's only evidence of her medical condition is her deposition testimony regarding an alleged doctor's note from June 2003 that states surgery *may* be necessary in the future. (Def.'s

---

[11] Plaintiff argues that the employer must give written notice of an employee's obligations regarding medical certification and cites *Perry v. Jaguar of Troy*, 353 F.3d 510, 514 (6th Cir. 2003) in support. The purpose of this notice requirement, obviously, is to notify an employee of her obligations in requesting FMLA leave. As such, *Perry* has not been strictly followed where an employee generally knew of his obligation to provide medical certification prior to requesting leave. *Allender v. Raytheon Aircraft Co.*, 339 F. Supp. 2d 1196, 1205 (D. Kan. 2004). Plaintiff admits that she knew of her obligation to furnish a note from her doctor any time there was an absence related to FMLA leave. (Pl.'s App. at 452.) Under the present facts, subsequent written notifications are not required when notice is given after the employee first requests leave and the employee handbook clearly provides that certification is required. *Perry*, 353 F.3d at 514 n.1; 29 C.F.R. § 825.301(c)(2)(ii).

App. at 203.) To date, Plaintiff has failed to submit any documentation from a doctor. Such a showing is insufficient to trigger the protections of the FMLA. For these reasons, summary judgment in favor of Defendants is proper on the FMLA claims.[12]

### VII.   WARN Act

Plaintiff's complaint also alleges that MCI failed to give her the required notice of a mass layoff as required by the Worker Adjustment and Retraining Notification Act ("WARN Act"), 29 U.S.C. § 2101, *et seq.* Under the WARN Act, certain employers are obligated to give their employees 60 days' notice before a plant closing or mass layoff. 29 U.S.C. § 2102(a); *United Food & Commercial Workers Union Local 751 v. Brown Group, Inc.*, 517 U.S. 544, 545-46 (1996). The WARN Act defines "mass layoff" as an RIF that is not the result of a plant closing which results in an employment loss at a single site for either (1) 33 percent or more of the employees (provided that at least 50 employees suffer an employment loss), or (2) at least 500 employees. 29 U.S.C.A. § 2101(a)(3)(B).

Plaintiff was terminated on January 26, 2004, as part of a reduction in force. Plaintiff was one of approximately 1,514 employees who worked at 2400 North Glenville, in Richardson, Texas, a site referred to as Location 107. (Def.'s App. 54-55.) Defendants state that approximately 110 employees were terminated from Location 107 between October 28, 2003,

---

[12] In deposition testimony, Plaintiff appears to state that she is bringing an FMLA claim for her gallbladder surgery. (Def.'s App. at 185.) But she makes no mention of the gallbladder surgery in her complaint, nor does she address it in her response to Defendants' motion for summary judgment on the gallbladder claim. As the claim is not pled in her complaint, it is not a viable cause of action. *See Trotter v. Steadman Motors, Inc.*, 47 F. Supp. 2d 791, 793-94 (S.D. Miss. 1999). Even if it were pled, it would fail for the same reasons as the FMLA claim for back surgery.

and April 26, 2004.[13] This number represents approximately seven percent (7%) of the workforce at Location 107, clearly taking it out of the realm of the WARN Act's prohibitions.

In response, Plaintiff fails to refute these figures with competent summary judgment evidence. Instead, Plaintiff claims that multiple MCI locations in the immediate proximity of Location 107 combined to constitute a "single site of employment." Plaintiff maintains that the combined number of employees terminated at this "single site" exceeds 500, which constitutes a mass layoff under the WARN Act. But the Fifth Circuit has clearly held that "separate facilities are only to be treated as a single site of employment if . . . 1) the separate facilities are in 'reasonable geographic proximity' of one another; 2) they are 'used for the same purpose'; 3) and they 'share the same staff and equipment.'" *Viator v. Delchamps Inc.*, 109 F.3d 1124, 1127 (5th Cir. 1997) (citing 20 C.F.R. § 639.3(i)(3) (1996)). Plaintiff provides no evidence that any of these elements are present and thus cannot overcome the presumption that "separate facilities are separate sites." *Viator*, 109 F.3d at 1127. As such, MCI's actions did not qualify as a "mass layoff" under the WARN Act and they are not liable for their failure to give Plaintiff 60 days' notice. Summary judgment in favor of the Defendants is proper on the WARN Act claims.

## VIII.   COBRA

Plaintiff further brings a claim against MCI for failure to notify of her COBRA rights. The Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA") authorizes a qualified beneficiary of an employer's group health plan to obtain continued coverage under the

---

[13] These dates represent ninety days before and after Plaintiff's termination date. The WARN Act provides that numerous reductions in force within a ninety day period may be aggregated to invoke the protections of the Act. 29 U.S.C.A. § 2102(d). Even with a 180 day time period, the losses of employment do not qualify as a mass layoff.

plan when she might otherwise lose that benefit for certain reasons, such as the termination of employment. *Geissal v. Moore Medical Corp.*, 524 U.S. 74, 76 (1998). When an employee enrolled in a benefits plan is terminated, COBRA requires the plan sponsor to notify the beneficiary of the option to continue coverage under the plan. 29 U.S.C. § 1166(a)(4); *see also Lopez ex rel. Guitierrez v. Premium Auto Acceptance Corp.*, 389 F.3d 504, 507-08 (5th Cir. 2004). Plaintiff claims that she was not given notice of her rights to elect continuation coverage, and was denied the opportunity to receive COBRA benefits because they were improperly tied to her signing MCI's release of claims form. (Compl. ¶ 78; Pl.'s Resp. at 10.)

Plaintiff was terminated from her employment on January 26, 2004. Defendants state that, on January 23, 2004, they transferred information regarding Plaintiff's termination to PayFlex Systems, USA, Inc. ("PayFlex"), MCI's third party administrator, so that PayFlex could mail Plaintiff her COBRA notification. (Def.'s App. at 82-3.) In affidavit, PayFlex asserts that a COBRA notification packet was sent to Plaintiff's last known (and current) mailing address on February 12, 2004, in accordance with the COBRA provisions.[14] (*Id.* at 7.) In the Fifth Circuit, "the law requires only that the employer make a good faith attempt to comply with COBRA's notification provision." *Degruise v. Sprint Corp.*, 279 F.3d 333, 337 (5th Cir. 2003); *see also Myers v. King's Daughters Clinic*, 912 F.Supp. 233, 236 (W.D. Tex. 1996). While the statute

---

[14] Under COBRA's provisions, an employer has 30 days in which to notify an ERISA-qualified plan administrator of any qualifying event, such as a covered employee's termination, and the administrator, in turn, has 14 days in which to notify the employee of his rights under ERISA as a plan beneficiary. 29 U.S.C. § 1166(a)(2), (4) & (c). Plaintiff argues that Defendants have violated 29 U.S.C. § 1166(c) as PayFlex did not mail the COBRA notice within 14 days of receiving notification of Plaintiff's termination. However, several courts have construed 29 U.S.C. § 1166(a) & (c) to give the employer a total of 44 days in which to notify a terminated employee, regardless of when the administrator received notice of the employee's termination. *See, e.g., Roberts v. Nat'l Health Corp.*, 963 F. Supp. 512, 515 (D. S.C. 1997). Furthermore, Plaintiff has not shown that she was harmed by PayFlex's delay in mailing the COBRA notice.

itself does not specify what exactly will qualify as notice, numerous courts have held that

mailing COBRA notification to an employee's last known address satisfies the notification

provision. *Degruise*, 279 F.3d at 337; *Myers*, 912 F. Supp. at 236; *Roberts v. Nat'l Health Corp.*,

963 F. Supp. 512, 514 (D. S.C. 1997); *Jachim v. KUTV Inc.*, 783 F. Supp. 1328, 1333 (D. Utah

1992); *Truesdale v. Pacific Holding Co/Hay Adams Div.*, 778 F. Supp. 77,  81-82 (D. D.C.

1991); *Vanderhoof v. Life Extension Institute*, 988 F. Supp. 507, 518 (D. N.J. 1997). As such, the

Court finds that Defendants gave Plaintiff adequate notice pursuant to COBRA.

  In addition, Plaintiff argues in her response and motion for partial summary that MCI

conditioned COBRA benefits on the signing of a release agreement. Plaintiff attaches a copy of a

letter dated January 26, 2004, from Chuck Trusty, Vice President of Human Resources, in

support of her position. (App. Pl.'s Mot. Partial Summ. J. at 4.) Plaintiff asserts that such letter

coerces employees to sign a release agreement in order to receive COBRA benefits. The letter

does state that, if Plaintiff were to sign the release agreement, her "coverage [would] continue

under COBRA for the length of [the] severance period." (*Id.*) While the letter is admittedly less

than clear, it does not state that this is the only way to receive COBRA benefits. Instead, the

plain language of the letter provides that Plaintiff would "receive a separate communication

regarding COBRA continuation of coverage within 60 days of [her] termination date" and gives

her a phone number to call for questions. (*Id.*) Plaintiff denies receiving this separate

communication (hereinafter "COBRA notification packet"), but in reply to her motion for partial

summary judgment she claims that the COBRA notification packet is coercive and invalid as a

matter of law. As Plaintiff contends that she was never given a copy of the COBRA notification

packet, it could not have coerced her into signing the release agreement. Thus, the Court will not consider this argument.

Plaintiff also argues that the Department of Labor has reviewed MCI's COBRA notice and found that it did not sufficiently give her notice of her COBRA rights. (Pl.'s Resp. at 10-11.) However, Plaintiff fails to provide competent summary judgment evidence in support of this proposition. Plaintiff cites a March 20, 2006, e-mail from June Harryman of the U.S. Department of Labor in which she states "we have reviewed your claim of inadequate COBRA notice from your previous employer, MCI. Our review of the notice indicates that it does not adequately provide information relating to your ability to elect COBRA coverage outside of the severance arrangement." (App. Pl.'s Resp. at 442.) But this statement is by no means a final conclusion of the Department of Labor; in fact, the e-mail goes on to state that they will "further pursue this issue with the legal department at MCI." (*Id.*) Importantly, there is no evidence of what documents the Department of Labor relied upon to make this opinion and the e-mail gives no reasoning to support its statement. Furthermore, Plaintiff submits no other evidence that would suggest this e-mail represents the opinion of the Department of Labor.[15] In the absence of such evidence, the Court cannot rely on this purported statement from the Department of Labor.[16] The Court notes that the letter sent by Mr. Trusty on behalf of MCI could be more explicit in informing its former employees of its right to COBRA benefits regardless of their signing of the

---

[15] Plaintiff further fails to submit an affidavit from June Harryman that would verify that she indeed wrote the e-mail at issue.

[16] The e-mail message is also the subject of Plaintiff's Motion for Leave to File Supplemental Appendix. As the Court finds this e-mail is not competent evidence, Plaintiff's Motion is DENIED.

release form. However, the Court concludes that Plaintiff was properly notified of her COBRA rights.

In sum, the Court finds that Plaintiff's receipt of COBRA benefits was not conditioned upon signing the release agreement and Defendants have met their burden to show that Plaintiff was given adequate notice of her COBRA rights pursuant to 29 U.S.C. § 1166(a)(4). MCI has provided evidence that the COBRA notification packet was mailed to Plaintiff in good faith. Furthermore, Plaintiff had notice of the COBRA notification packet through the January 26, 2004, letter from Chuck Trusty.  For these reasons, Defendants' motion for summary judgment on the COBRA claims is granted and Plaintiff's motion for partial summary judgment is denied as moot.

## IX.  Conclusion

For the foregoing reasons, the Court hereby DENIES AS MOOT Plaintiff's Motion for Partial Summary Judgment; DENIES AS MOOT Defendants' Motion to Stay; GRANTS Defendants' Motion for Leave to File Sur-Reply; DENIES Plaintiff's Motion for Leave to File Supplemental Appendix in Support of Motion for Partial Summary Judgment; and GRANTS Defendants' Motion for Summary Judgment in all respects. Even if Plaintiff's summary judgment evidence was considered in its entirety, Defendants' Motion for Summary Judgment would still be granted. As such, the Court hereby DENIES AS MOOT Defendants' Motion to Strike Plaintiff's Summary Judgment Evidence.

**It is so ordered**.

Signed this 7th day of August 2006.

_____

JORGE A. SOLIS
UNITED STATES DISTRICT JUDGE